**In re TOTAL TRANSPORTATION, INC., Debtor.**

**Thomas F. MILLER, Trustee for the Bankruptcy Estate of Total Transportation, Inc., Plaintiff,**

**v.**

**HAVE–A–PORTION, INC., Defendant.**

Bankruptcy No. 4–85–1909.
Adv. No. 4–87–259.

United States Bankruptcy Court,
D. Minnesota.

Aug. 17, 1993.

Paul Taylor, Harris & Taylor, Bloomington, MN, for plaintiff.

Andrew R. Clark, Kalina, Wills, Woods, Gisvold & Clark, Minneapolis, MN, for defendant.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND ORDER FOR JUDGMENT

NANCY C. DREHER, Bankruptcy Judge.

At Minneapolis, Minnesota, August 17, 1993.

### UNDISPUTED FACTS

1. Total Transportation, Inc. ("TTI") was a motor common carrier operating in interstate commerce pursuant to a certificate issued by the Interstate Commerce Commission ("ICC").

2. Have–A–Portion, Inc. ("HAP") was incorporated as a Minnesota corporation on July 29, 1974. All reference herein to Have–A–Portion or HAP refer solely to such entity, and do not refer to the entity formerly known as Osborn Acquisitions, Inc., which was incorporated on December 21, 1986, and subsequently purchased the assets of HAP and the trade name "Have–A–Portion, Inc."

3. Thomas F. Miller ("Miller") is the trustee for the bankruptcy estate of TTI.

4. Commencing on or about August 12, 1982, and ending on or about August 27, 1983, HAP utilized the services of TTI to transport 58 truckload shipments of sugar from Sugarland, Texas to Roseville, Minnesota.

5. TTI originally billed HAP a flat rate of $800.00 per shipment. This rate was not based on any tariff which TTI maintained on file with the ICC.

6. Eleven shipments moved prior to November 3, 1982. For these shipments the applicable rate is 140 cents per mile as set forth in tariff ICC TOLT 201, Item 3000-C.

7. Forty-seven shipments moved on or after November 3, 1982. For these shipments the applicable rate is 140 cents per mile as set forth in tariff ICC TOLT 201-A, Item 2100.

8. Tariffs ICC TOLT 201 and ICC TOLT 201-A are governed by tariff ICC HGB 100 for calculation of distances. Application of that tariff indicates the distance from Sugarland, Texas to Roseville, Minnesota is 1,166 miles.

9. The gross charge for each of the 58 shipments is $1,632.40 based upon tariffs ICC TOLT 201 and ICC TOLT 201-A which were then on file with the ICC.

10. The difference between the tariff charges for the 58 shipments and the charges previously paid by HAP to TTI is $48,279.20.

11. The involuntary petition commencing this bankruptcy case was filed on September 20, 1985.

12. The present adversary proceeding was commenced on September 18, 1987. In his complaint, Miller seeks to recover "undercharges" from HAP, *i.e.*, the difference between the amount due under the tariff rates and the amounts that TTI actually billed HAP. HAP filed an answer asserting that the trustee's attempts to collect the tariff rate when TTI negotiated a lower rate was inequitable and constituted an "unreasonable practice."

13. I initially granted summary judgment in favor of Miller on April 25, 1989. I concluded that HAP's unreasonable practice defense could not defeat Miller's action to collect undercharges because the so-called "filed rate doctrine" required TTI to charge the tariff rates.

14. My order granting summary judgment was reversed by the District Court, which held that the filed rate doctrine is subject to equitable defenses such as HAP's unreasonable practice defense, and that the validity of such defenses should be determined by the ICC.

15. Accordingly, the case was remanded to this court, and referred to the ICC on September 13, 1989 for resolution of HAP's unreasonable practice defense.

16. While the case was pending before the ICC, the United States Supreme Court held in *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 133, 110 S.Ct. 2759, 2769, 111 L.Ed.2d 94 (1990), that the unreasonable practice defense could not frustrate application of the filed rate doctrine. However, *Maislin* expressly left open the question whether a carrier could be denied the tariff rates based on the argument that such rates were unreasonable.

17. After *Maislin*, HAP failed to pursue its unreasonable practice claim before the ICC, and it also failed to raise any claim based upon the unreasonable rate theory alluded to in *Maislin*. Miller then brought a motion in this case to withdraw the referral to the ICC, and grant summary judgment based on HAP's inaction.

18. On September 4, 1991, I denied Miller's motion, but I instructed HAP to initiate the appropriate proceedings before the ICC within 10 days of the date of my order.

19. The matter has now been submitted to the ICC for well in excess of a year, but the ICC apparently will not render any decision in rate unreasonableness cases before January of 1994.

## DISCUSSION

■ Miller now moves for summary judgment arguing that he is entitled to judgment as a matter of law based on the United States Supreme Court's recent decision in *Reiter v. Cooper*, —— U.S. ——, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). Miller further asserts that judgment should be entered on his undercharge claim immediately, without waiting for the ICC to resolve HAP's claim of rate unreasonableness. Miller argues that the bankruptcy

estate is being prejudiced by the ICC's recalcitrance in resolving the rate unreasonableness claim. HAP's only response to Miller's motion is that immediate entry of judgment is not authorized under *Reiter* and should be stayed until resolution of the rate unreasonableness claim before the ICC. Although the parties initially disputed the proper rate of prejudgment interest and the date from which such interest should accrue, HAP has withdrawn its opposition to applying an interest rate of 9.633 percent per annum running from the date the shipments were delivered.

Federal Rule of Civil Procedure 56(c), as incorporated by Bankruptcy Rule 7056, provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party on summary judgment bears the initial burden of showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to produce evidence that would support a finding in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). This responsive evidence must be probative, and must "do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Miller has met his initial burden and HAP has offered nothing to establish that Miller is not entitled to recover under the filed rate doctrine. 49 U.S.C. § 10761 requires carriers to charge shippers the tariff rate filed with the ICC. Neither the allegations of unreasonable practices nor unreasonable rates would prevent entry of summary judgment in Miller's favor.

First, with respect to unreasonable practices, the fact that the carrier and shipper may have negotiated a lower rate does not relieve the shipper of the obligation to pay the tariff rate. The Supreme Court expressly so held in *Maislin. See Maislin*, 497 U.S. at 133, 110 S.Ct. at 2769. Thus, the unreasonable practice defense is legally insufficient to defeat Miller's undercharge claim.

Second, with respect to unreasonable rates, the Supreme Court's recent opinion in *Reiter v. Cooper*, — U.S. —, —, 113 S.Ct. 1213, 1217, 113 S.Ct. 1213 (1993), holds that an assertion of unreasonable rates brought in response to an undercharge claim is actually a counterclaim for reparations and should be treated as such. *Reiter*, at —, 113 S.Ct. at 1217. If the trustee is entitled to recovery on the undercharge claim, then the reparations counterclaim is in the nature of recoupment. *Reiter*, at —, 113 S.Ct. at 1218. The Court further held that judgment can be entered separately on the undercharge claim prior to resolution of the reparations counterclaim. *Reiter*, at —, —, 113 S.Ct. at 1218, 1221. Thus, while HAP may have a valid counterclaim for reparations if the tariff rate is unreasonable, the fact provides no defense to Miller's undercharge claim.

Accordingly, Miller is entitled to summary judgment; there are no facts in dispute, and the record establishes Miller's right to judgment in the amount of the undercharges based on the filed rate doctrine. Furthermore, none of HAP's legal remedies are sufficient to defeat Miller's undercharge claim. HAP may be entitled to recoupment based on its reparations counterclaim, but Miller would still be entitled to judgment for the undercharges.

Federal Rule of Civil Procedure 54(b), as incorporated by Bankruptcy Rule 7054(a) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are

involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed.R.Civ.P. 54(b). Miller argues that I should make a finding under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay, and direct entry of judgment on his undercharge claim.

In *Reiter*, the Supreme Court held that judgment can be entered on a trustee's undercharge claim while the shipper's reparations counterclaim remains pending before the ICC. *Reiter*, at ——, 113 S.Ct. at 1219. The decision is "largely discretionary, to be exercised in light of 'judicial administrative interests as well as the equities involved,' and giving de weight to 'the historic federal policy against piecemeal appeals.'" *Id.* at ——, 113 S.Ct. at 1218 (citations omitted). Where the carrier is solvent and has promptly initiated the undercharge suit, the Court held the equities would favor separate judgment since referral of the unreasonable rate issue could result in substantial delays and since the filed tariff rates are legal and binding on both the shipper and carrier. *Id.* at ——, 113 S.Ct. at 1221. The Court acknowledged that the equities could change if the carrier was insolvent, but ultimately concluded that insolvency is not an absolute bar to separate entry of judgment. *Id.* at ——, 113 S.Ct. at 1221. Specifically, the Court held that insolvency would not be a bar where there was a threat that the *shipper* may become insolvent. *Id.* at ——, 113 S.Ct. at 1221.

The Eighth Circuit Court of Appeals has also provided recent guidance on application of Rule 54(b) in *Interstate Power Co. v. Kansas City Power & Light Co.*, 992 F.2d 804 (8th Cir.1993). In *Interstate Power*, the Eighth Circuit admonished the lower court for directing separate entry of judgment on a novel issue of statutory construction. The Eighth Circuit reasoned that separate entry of judgment on such a claim was not warranted where resolution of other claims in the case possibly could have mooted the statutory issue, and where resolution of the other claims would involve the same nucleus of operative facts and similar legal issues. *Interstate Power*, 992 F.2d at 807.

Separate entry of judgment on Miller's undercharge is warranted in the present case. Although the debtor here is insolvent, such is not an absolute bar to separate entry, and the equities are in Miller's favor. Miller filed this adversary proceeding six years ago. Two similar cases have proceeded to resolution before the Supreme Court, while this case continually lingers before the ICC awaiting resolution of issues substantially identical to those already addressed by the Supreme Court. The record before me now suggests that the ICC plans to defer making decisions in any unreasonable rate cases until early next year, which still gives me no indication that a decision in this case is forthcoming any time soon. Miller has simply waited long enough. Any concern that HAP may have regarding TTI's insolvency can be eliminated if I order the judgment to be paid into court or into a separate escrowed account pending resolution of HAP's counterclaim, rather than being paid directly to Miller. Furthermore, the record shows HAP itself may be insolvent.

Judicial administrative interests are also furthered by separate entry of judgment. Although piecemeal appeals should be avoided, a strain is placed on the court when cases languish on the shelf with little activity and no likelihood of judicial resolution in sight. Separate entry of judgment may provide incentive for rigorous prosecu-

tion of matter spending before the ICC and a speedy resolution to this aging case.

Accordingly, I find there to be no just reason for delaying entry of judgment on Miller's undercharge claim.

### CONCLUSIONS

Miller is entitled to summary judgment because the undisputed facts establish a right to recover undercharges under the filed rate doctrine. None of the assertions pled by HAP in this case present a bar to judgment in Miller's favor on his undercharge claim. Separate entry of judgment at this time is warranted. The equities balance in favor of Miller, and entry of judgment at this time will speed judicial administration of the case.

ACCORDINGLY, IT IS HEREBY ORDERED:

1. Miller's motion for summary judgment is GRANTED;

2. Miller shall recover $48,279.20 from HAP, plus prejudgment interest on each shipment from the date of delivery at the rate of 9.633 percent per annum for a total interest amount of $82,307.74, plus costs of $120.00 for a total amount of $130,706.94, plus postjudgment interest;

3. Enforcement of the judgment is STAYED for a period of 15 days to permit HAP to deposit the judgment amount in a separate escrow account;

4. In the event HAP fails to deposit the judgment amount within 15 days of the date of this order, Miller may take all appropriate measures to enforce the judgment;

5. If the ICC fails to render a decision on HAP's rate unreasonableness claim before January 15, 1994, the amount deposited into the escrow account shall be released to Miller; and

6. This order and any judgment entered pursuant hereto does not apply to the entity formerly known as Osborn Acquisitions, Inc., which was incorporated on December 21, 1986, and subsequently purchased the assets of HAP and the trade name "Have-A-Portion, Inc."

LET JUDGMENT BE ENTERED ACCORDINGLY.